# No. 20-20575

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff–Appellee*;

v.

GEORGE DANIEL MCGAVITT,
*Defendant–Appellant.*

On Appeal from the United States District Court
For the Southern District of Texas
Houston Division, No. 4:19-CR-649-1

BRIEF OF PLAINTIFF–APPELLEE

JENNIFER B. LOWERY
Acting United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

ANDREW C. SAND
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

The record and briefs adequately present the facts and legal arguments to resolve this appeal without oral argument. Fed. R. App. P. 34(a)(2)(C). The Government, however, does not oppose George McGavitt's request for argument based on his life sentence and the number of legal issues raised in this appeal.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT .......................................i

TABLE OF AUTHORITIES ..................................................................v

STATEMENT OF JURISDICTION ..........................................................1

STATEMENT OF THE ISSUES ...............................................................1

STATEMENT OF THE CASE ................................................................3

    I.    Factual background. ................................................................4

        A.    McGavitt's and Minor Victim No. 1's Facebook accounts contained sexually explicit messages and child pornography of her...................................................5

        B.    McGavitt's cell phone contained child pornography of Minor Victim No. 1 and explicit images of himself. .........................................................................7

        C.    McGavitt traveled to Arkansas and had sexual intercourse with Minor Victim No. 1. ............................9

        D.    Minor Victim No. 1 detailed her sexual relationship with McGavitt in her interview with law enforcement. ..............................................................9

    II.    Procedural history....................................................................9

        A.    Indictment and guilty plea. ............................................9

        B.    PSR. ...............................................................................11

        C.    Objections to the PSR. ..................................................13

# TABLE OF CONTENTS, cont'd

**Page**

D.   PSR addendum ............................................................ 14

E.   PSR second addendum (Minor Victim No. 1's letter). ................................................................ 15

F.   Sentencing. ................................................................ 17

SUMMARY OF ARGUMENT ................................................ 20

ARGUMENT ........................................................................... 26

I.   The district court did not clearly err in applying the sadism enhancement under U.S.S.G. § 2G2.1(b)(4)(A). ....... 26

A.   The standard of review is clear error. .......................... 26

B.   The sadism enhancement was properly applied. ........ 27

II.   The district court did not plainly err in applying the distribution enhancement under U.S.S.G. § 2G2.1(b)(3). .... 34

A.   The standard of review is plain error. ......................... 34

B.   The distribution enhancement was correctly applied. ................................................................... 35

C.   Even assuming legal error, the distribution enhancement did not constitute clear or obvious error. ........................................................................ 42

D.   Even assuming obvious error, the distribution enhancement did not affect McGavitt's substantial rights. ........................................................................ 43

iii

# TABLE OF CONTENTS, cont'd

**Page**

    E.    This Court should not exercise its discretion to reverse the distribution enhancement........................45

III.    The district court did not plainly err in applying the sexual act enhancement under U.S.S.G. § 2G2.1(b)(2)(A). ....................................................47

    A.    The standard of review is plain error. .........................47

    B.    The sexual act enhancement was rightly applied. .......48

        1.    McGavitt's rape of Minor Victim No. 1 fell under his relevant conduct for Count 2. .............51

        2.    McGavitt's rape of Minor Victim No. 1 was not double counted. ...............................................54

        3.    The Sentencing Guidelines grouping rules were properly applied. ........................................55

    C.    Even assuming legal error, the sexual act enhancement did not constitute obvious error. ...........60

    D.    Even assuming obvious error, the sexual act enhancement did not affect McGavitt's substantial rights. .........................................................................61

    E.    This Court should not exercise its discretion to reverse the sexual act enhancement............................62

CONCLUSION .......................................................................64

CERTIFICATE OF SERVICE.................................................66

CERTIFICATE OF COMPLIANCE .......................................67

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*Jimenez v. Wood Cty., Tex.*, 660 F.3d 841 (5th Cir. 2011)
(en banc) ................................................................................... 42, 60

*Puckett v. United States*, 556 U.S. 129 (2009) ................................ *passim*

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) ................ 46, 63

*United States v. Alford*, 812 F. App'x 291 (5th Cir. 2020) ...................... 55

*United States v. Alvarado-Martinez*, 713 F. App'x 259
(5th Cir. 2017) .......................................................................... 42, 60

*United States v. Bohuchot*, 625 F.3d 892 (5th Cir. 2010) ................. 44, 61

*United States v. Canada*, 110 F.3d 260 (5th Cir. 1997) .......................... 31

*United States v. Carreon*, 11 F.3d 1225 (5th Cir. 1994) ......................... 51

*United States v. Clayton*, 613 F.3d 592 (5th Cir. 2010) ......................... 36

*United States v. Cloud*, 630 F. App'x 236 (5th Cir. 2015) ..... 27, 28, 29, 33

*United States v. Comeaux*, 445 F. App'x 743 (5th Cir. 2011) ........... 29, 32

*United States v. Crittenden*, 372 F.3d 706 (5th Cir. 2004) .............. 35, 48

*United States v. Delmarle*, 99 F.3d 80 (2d Cir. 1996) ............................ 33

*United States v. Desadier*, 495 F. App'x 501 (5th Cir. 2012) ............ 29, 31

*United States v. Dickson*, 632 F.3d 186 (5th Cir. 2011) .............. 51, 57, 59

*United States v. Ehret*, 807 F. App'x 330 (5th Cir. 2020) ...................... 31

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                      **Page(s)**

*United States v. Escalante-Reyes*, 689 F.3d 415
(5th Cir. 2012) (en banc) ................................................ 43, 60, 64

*United States v. Flores*, 862 F.3d 486 (5th Cir. 2017) ........................... 64

*United States v. Fraga*, 704 F.3d 432 (5th Cir. 2013) .......................... 30

*United States v. Fuller*, 77 F. App'x 371 (6th Cir. 2003) ...................... 32

*United States v. Garcia–Gonzalez*, 714 F.3d 306 (5th Cir. 2013) ..... 42, 62

*United States v. Garrett*, 190 F.3d 1220 (11th Cir. 1999) ...................... 32

*United States v. Girod*, 646 F.3d 304 (5th Cir. 2011) ...................... 34, 47

*United States v. Grzybowicz*, 747 F.3d 1296 (11th Cir. 2014) ............... 36

*United States v. Hecht*, 470 F.3d 177 (4th Cir. 2006) ........................... 36

*United States v. Hernandez*, 894 F.3d 1104 (9th Cir. 2018) ............. 35, 39

*United States v. Jasso*, 587 F.3d 706 (5th Cir. 2009) ........................... 34

*United States v. Johnson*, 784 F.3d 1070 (7th Cir. 2015)
(unpublished) ................................................................................. 32

*United States v. Kimbrough*, 69 F.3d 723 (5th Cir. 1995) ...................... 31

*United States v. King*, 979 F.3d 1075 (5th Cir. 2020) ................. 39, 40, 44

*United States v. Lyckman*, 235 F.3d 234 (5th Cir. 2000) ............... *passim*

*United States v. Merrill*, 578 F. Supp. 2d 1144 (N.D. Iowa 2008) .... 40, 42

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                    **Page(s)**

*United States v. Mims*, No. 19-50921, 2021 WL 1220888
   (5th Cir. Apr. 1, 2021) ................................................................ 47

*United States v. Nesmith*, 866 F.3d 677 (5th Cir. 2017) ............. 26, 28, 30

*United States v. Nimerfroh*, 716 F. App'x 311 (5th Cir. 2018) ......... 45, 62

*United States v. Odom*, 694 F.3d 544 (5th Cir. 2012) ............................ 27

*United States v. Olano*, 507 U.S. 725 (1993) ......................................... 34

*United States v. Olea-Rivera*, 318 F. App'x 292 (5th Cir. 2009) ....... 43, 61

*United States v. Olivares*, 833 F.3d 450 (5th Cir. 2016)
   (per curiam) ....................................................................... 27

*United States v. O'Neal*, 742 F. App'x 836 (5th Cir. 2018) .............. 46, 63

*United States v. Parker*, 267 F.3d 839 (8th Cir. 2001) ........................... 32

*United States v. Randall*, 924 F.3d 790 (5th Cir. 2019) ................... 45, 46

*United States v. Rivera*, 784 F.3d 1012 (5th Cir. 2015) ................... 46, 63

*United States v. Segler*, 37 F.3d 1131 (5th Cir. 1994) ........................... 55

*United States v. Starr*, 533 F.3d 985 (8th Cir. 2008) ............................. 32

*United States v. Vega-Garcia*, 893 F.3d 326 (5th Cir. 2018) ................. 30

*United States v. Velasquez*, 825 F.3d 257 (5th Cir. 2016) ..... 44, 45, 61, 62

*United States v. Vonn*, 535 U.S. 55 (2002) ...................................... 46, 63

# TABLE OF AUTHORITIES, cont'd

**Rules and Statutes**                                    **Page(s)**

Fed. R. App. P. 4(b)(1)(A) ................................................................ 1

Fed. R. App. P. 34(a)(2)(C) ...............................................................i

18 U.S.C. § 2246(2) ....................................................................... 48

18 U.S.C. § 2246(2)(A) ............................................................. 49, 51

18 U.S.C. § 2246(2)(D) ............................................................. 49, 51

18 U.S.C. § 2246(3) ............................................................. 48, 49, 51

18 U.S.C. § 2251(a) ................................................................. 10, 11

18 U.S.C. § 2251(e) ................................................................. 10, 11

18 U.S.C. § 2252A(a)(5)(B) ............................................................ 10

18 U.S.C. § 2252A(b)(2) ................................................................ 10

18 U.S.C. § 2422(b) ...................................................................... 10

18 U.S.C. § 3231 ............................................................................ 1

18 U.S.C. § 3553(a) ................................................... 19, 44, 45, 62

18 U.S.C. § 3742(a) ........................................................................ 1

28 U.S.C. § 1291 ............................................................................ 1

Ark. Code § 5-14-101 ..................................................................... 4

Ark. Code § 5-14-103 ..................................................... 4, 10, 50

# TABLE OF AUTHORITIES, cont'd

**United States Sentencing Guidelines**                    **Page(s)**

U.S.S.G. § 1B1.1(a)-(c) .............................................................58

U.S.S.G. § 1B1.1(a)(1)-(4) ........................................................59

U.S.S.G. § 1B1.1 cmt. n.1(I) .......................................37, 49, 52

U.S.S.G. § 1B1.2(b) ...........................................................37, 49

U.S.S.G. § 1B1.3 ................................................................37, 52

U.S.S.G. § 1B1.3(a)(1)........................................................59, 60

U.S.S.G. § 1B1.3(a)(1)(A)..................................................*passim*

U.S.S.G. § 2G2.1 ................................................................35, 36

U.S.S.G. § 2G2.1(a) ...................................................................11

U.S.S.G. § 2G2.1(b)(1)(B) .....................................................11, 13

U.S.S.G. § 2G2.1(b)(2)(A) ..................................................*passim*

U.S.S.G. § 2G2.1(b)(3) ......................................................*passim*

U.S.S.G. § 2G2.1(b)(4) ........................................................28, 29

U.S.S.G. § 2G2.1(b)(4)(A) .................................................*passim*

U.S.S.G. § 2G2.1(b)(6)(B)(ii)....................................................12

U.S.S.G. § 2G2.1 cmt. n.1...........................................35, 38, 41

U.S.S.G. § 2G2.1 cmt. n.2.........................................................48

# TABLE OF AUTHORITIES, cont'd

**United States Sentencing Guidelines**                    **Page(s)**

U.S.S.G. § 2G2.1 cmt. n.3 ................................................................36, 37

U.S.S.G. § 2G2.1 cmt. n.3(B) ...................................................39, 40, 41

U.S.S.G. § 2G2.1 cmt. n.3(C) ...................................................39, 40, 41

U.S.S.G. § 2G2.2(b)(4) .............................................................................28

U.S.S.G. § 3D1.2 ..............................................................................54, 55

U.S.S.G. § 3D1.2(b) ........................................................................11, 56

U.S.S.G. § 3D1.2(c) ......................................................11, 54, 55, 56, 57

U.S.S.G. § 3D1.2 cmt. n.5 ...............................................................51, 61

U.S.S.G. § 3D1.2(c) cmt. n.5 ................................................................54

U.S.S.G. § 3D1.3(a) ...............................................................................57

U.S.S.G. § 3D1.3 cmt. n.2 ...................................................11, 56, 58, 59

U.S.S.G. § 3E1.1(a) ...............................................................................12

U.S.S.G. § 3E1.1(b) ...............................................................................12

U.S.S.G. § 4B1.1 ....................................................................................12

U.S.S.G. § 4B1.5(a) ...............................................................................12

U.S.S.G. § 4B1.5(b)(1)............................................................12, 14, 15, 18

U.S.S.G. ch. 5, pt. A, cmt. n.2.......................................................12, 44, 62

# TABLE OF AUTHORITIES, cont'd

**Other Authorities**                                        **Page(s)**

William W. Wilkins & John R. Steer, *Relevant Conduct: The Cornerstone of the Sentencing Guidelines*, 41 S.C. L. Rev. 495 (1990) .............................................................................52

## STATEMENT OF JURISDICTION

This appeal arises from McGavitt's federal criminal prosecution, for which the district court (Miller, J.) had jurisdiction under 18 U.S.C. § 3231. The district court imposed judgment of conviction and sentence on October 15, 2020, which the clerk entered on October 30, 2020. ROA.61.[1] McGavitt timely filed his notice of appeal on November 2, 2020. ROA.68; *see* Fed. R. App. P. 4(b)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

1.   Whether the district court properly applied the enhancement for material portraying sadistic, masochistic, or violent conduct under U.S.S.G. § 2G2.1(b)(4)(A), given that: (1) McGavitt's cell phone contained a video showing Minor Victim No. 1 sexually penetrating herself with a hairbrush handle, which was produced and sent at his behest; and (2) this conclusion aligns with established precedents.[2]

---

[1] ROA refers to the record on appeal, and the page number corresponds to the number following "20-20575." in the bottom-right corner of the record-on-appeal pages. The PSR refers to the Presentence Investigation Report, prepared April 28, 2020, and is cited by the ROA and PSR paragraph number ("¶"). ROA.167.

[2] Guidelines and U.S.S.G. refer to the U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2018). ROA.177 (PSR ¶ 40).

2.    Whether the district court correctly applied the enhancement for distributing child pornography under U.S.S.G. § 2G2.1(b)(3), given that: (1) McGavitt's relevant conduct encompassed the transfer of three such images of Minor Victim No. 1; (2) he failed to point to any contradictory precedent; (3) his Guidelines range would remain the same even if he prevailed; and (4) he failed to provide the required case-specific and fact-intensive basis to support his remedy assertion.

3.    Whether the district court rightly applied the enhancement for a sexual act or conduct under U.S.S.G. § 2G2.1(b)(2)(A), given that: (1) McGavitt's relevant conduct encompassed his rape of Minor Victim No. 1 and his counts were grouped properly; (2) he failed to point to any contradictory precedent; (3) his Guidelines range would remain unchanged even if he prevailed; and (4) he failed to provide the required case-specific and fact-intensive basis to support his remedy assertion or to dispute this rape.

# STATEMENT OF THE CASE

"I am goin get u pregnant an marry u" is what McGavitt (age 45) promised Minor Victim No. 1 (age 12). ROA.172 (PSR ¶ 17). For almost a year, they were involved in a sexual relationship. Over the internet and phone, they exchanged sexually explicit messages and images, including child pornography of her. In April 2019, he traveled from Texas to Arkansas and had sexual intercourse with her. Eventually, Minor Victim No. 1 told her parents about the relationship.

Following an investigation, McGavitt pled guilty to: (1) coercion and enticement of a minor to engage in criminal sexual activity, namely rape; (2) sexual exploitation of a child for the purpose of producing child pornography; and (3) possession of child pornography. ROA.31–34, 84–114. The district court imposed a within-Guidelines-range sentence of life imprisonment. ROA.115–52.

On appeal, McGavitt challenges three of his sentencing enhancements: (1) portrayal of sadistic or masochistic conduct or other depictions of violence under Section 2G2.1(b)(4)(A); (2) distribution of child pornography under Section 2G2.1(b)(3); and (3) a sexual act or conduct under Section 2G2.1(b)(2)(A).

## I.    Factual background.[3]

From November 2018 until August 2019, McGavitt was involved in a sexual relationship with Minor Victim No. 1.[4] He lived near Pasadena, Texas; she lived near West Fork, Arkansas. ROA.171 (PSR ¶¶ 11–12). Over the internet and phone, they exchanged sexually explicit messages and images, including child pornography of her. ROA.171–74 (PSR ¶¶ 9–24, 28). In April 2019, they had sexual intercourse, which constituted rape in Arkansas. ROA.171, 174 (PSR ¶¶ 9, 25–28); *see* Ark. Code §§ 5-14-101, 5-14-103.

Eventually, Minor Victim No. 1 told her parents about her sexual relationship with McGavitt. ROA.171 (PSR ¶ 9). Minor Victim No. 1 stated that: she and McGavitt had been communicating over Facebook, he had requested that she send sexually explicit photographs and videos of herself, and he had traveled to Arkansas and had sexual intercourse with her in April 2019. ROA.105; *see* ROA.171 (PSR ¶ 9).

Afterward, law enforcement investigated and uncovered evidence

---

[3] These facts come from McGavitt's factual basis, which he admitted at re-arraignment, and his PSR, which the district court adopted. ROA.104–11; *see* ROA.170–74 (PSR ¶¶ 7–28).

[4] McGavitt was born in September 1973, and it appears that Minor Victim No. 1 was born in October 2006. ROA.172, 180 (PSR ¶¶ 17, 62). Thus, during the time of the instant offense, he was 45 years old, and she was 12 years old. *See* ROA.130, 222.

of McGavitt and Minor Victim No. 1's illicit sexual relationship through their Facebook accounts, his cell phone, his trip to Arkansas in April 2019, and her interview.

### A. McGavitt's and Minor Victim No. 1's Facebook accounts contained sexually explicit messages and child pornography of her.

McGavitt's and Minor Victim No. 1's Facebook accounts contained sexually explicit messages and child pornography of her. ROA.171 (PSR ¶¶ 8, 10). Using Facebook, McGavitt and Minor Victim No. 1 engaged in "explicit communications," including on March 8, 12–13, 16, 22–23, April 4–5, 7–9, 12–13, 30, May 2–3, 15, 20, 22. ROA.172 (PSR ¶ 14).

McGavitt's messages showed that he knew Minor Victim No. 1 was under the legal age of consent. ROA.172 (PSR ¶¶ 16–18). Multiple times, he mentioned the date of her 16th birthday. ROA.172 (PSR ¶ 17). On March 23, 2019, he told her: "I want to get ur pregnant," "I am goin get u pregnant an marry u," and "We got 3 years before we get marry." ROA.172 (PSR ¶ 17).

Minor Victim No. 1 sent to McGavitt three images of herself that were child pornography on April 30, May 2, and May 3, 2019, respectively. ROA.172 (PSR ¶¶ 15, 19). All three images showed Minor Victim

No. 1 "either rubbing her vagina or [] inserting her fingers into her vagina." ROA.172 (PSR ¶ 15). Sexually explicit messages accompanied these images. On May 2, Minor Victim No. 1 said: "I don't know maybe it just cuz I'm pretty tiny for a 14 year old." ROA.172 (PSR ¶ 16). The next day, McGavitt stated: "Let me see ur p\*\*sy open ur p\*\*sy." ROA.172 (PSR ¶ 16). Minor Victim No. 1 responded a few minutes later by "sending an image depicting a minor female with her hand rubbing her vagina." ROA.172 (PSR ¶ 16). She later confirmed that these "were in fact images she produced at his behest." ROA.172 (PSR ¶ 16).

In May 2019, McGavitt sent sexually explicit images and messages to Minor Victim No. 1 on a regular basis. On May 15, McGavitt declared: "I know I'm going to deal with a lot till u 18 and I'm ok with that babe." ROA.172 (PSR ¶ 18). That same day, he sent "an image depicting an erect adult penis being held in an adult male's right hand." ROA.172 (PSR ¶ 19). He followed the image by saying: "It all urs," "u want to cum," "u want to cum with me," and "u want to cum babe." ROA.172 (PSR ¶ 19). On May 20, McGavitt sent a similar image to Minor Victim No. 1, followed by "more explicit context." ROA.172 (PSR ¶ 19). He continued sending to her at least two messages a day until May 31. ROA.172 (PSR

¶ 19).

## B.    McGavitt's cell phone contained child pornography of Minor Victim No. 1 and explicit images of himself.

McGavitt's cell phone contained messages, child pornography of Minor Victim No. 1, and explicit images of himself. ROA.171, 173 (PSR ¶¶ 13, 21). Using his phone, McGavitt "sen[t] at least two messages per day to [Minor Victim No. 1]" until August 14, 2019. ROA.173 (PSR ¶ 21). These messages included the following: "morning babe I love you (with a kiss/face emoji)," "gn babe I love you (same emoji)," "I miss u a lot," "I love u," and "I just want to saw I love u and hope one day we be together again. I know u got someone else I hope he make u happy I really don't know what I did wrong and why u did this to us I never have hurt u or break ur heart I hope u never forget me just remember I love u always I don't we together still all on u I love u and miss." ROA.173 (PSR ¶ 21).

Also, McGavitt's phone contained numerous image and video files of Minor Victim No. 1, many of which constituted child pornography. ROA.173 (PSR ¶ 22). There were 71 total image files of Minor Victim No. 1, of which 16 image files were child pornography. ROA.173 (PSR ¶ 22). All 13 video files of Minor Victim No. 1 were child pornography. ROA.173 (PSR ¶ 22). Of these, two images and two videos of child pornography

showed the following:

a)     This is an image file depicting [Minor Victim No. 1], who
is 13 years of age, lying down on a bed while only wear-
ing a white bra. [Minor Victim No. 1], whose face is vis-
ible in the image, can be seen inserting two [of] her fin-
gers into her vagina.

b)     This is an image file depicting [Minor Victim No. 1], who
is 13 years of age, inserting a finger into her vagina.

c)     This is a video file that is 22 seconds in length depicting
[Minor Victim No. 1] who is 13 years of age, lying down
on a bed while completely nude. [Minor Victim No. 1],
whose face is visible throughout the video, can be seen
inserting the handle of a hairbrush into her vagina.

d)     This is a video file that is 17 seconds in length depicting
[Minor Victim No. 1] who is 13 years of age, lying down
on a bed while completely nude. [Minor Victim No. 1]
whose face is visible throughout the video, can be seen
inserting her fingers into her vagina.

ROA.173 (PSR ¶ 24).[5]

Finally, McGavitt's cell phone contained several pictures of himself

that he had sent to Minor Victim No. 1 over Facebook. ROA.173 (PSR

¶ 23). These pictures were "either of himself or of his penis." ROA.173

(PSR ¶ 23).

---

[5] It appears that Minor Victim No. 1 was 12 years old—not 13 years old—at the time
of the offense. *See supra* note 4.

### C.   McGavitt traveled to Arkansas and had sexual intercourse with Minor Victim No. 1.

In April 2019, McGavitt traveled to Arkansas and had sexual intercourse with Minor Victim No. 1. This trip was confirmed by an Arkansas tow company, that assisted a Ford F-150 that was stuck in a ditch near Minor Victim No. 1's residence. ROA.171, 174 (PSR ¶¶ 11, 26–27). The F-150 had "paper tags out of Texas." ROA.174 (PSR ¶ 26). A photograph of the incident verified that McGavitt was the driver of the F-150, which belonged to him. ROA.174 (PSR ¶ 27).

### D.   Minor Victim No. 1 detailed her sexual relationship with McGavitt in her interview with law enforcement.

In her interview with law enforcement, Minor Victim No. 1 identified McGavitt and detailed their sexual relationship, including their exchange of sexually explicit messages and sexual intercourse during his trip to Arkansas. ROA.174 (PSR ¶ 28). Minor Victim No. 1 identified and dated several images of child pornography that were "produced by her at the request of McGavitt." ROA.174 (PSR ¶ 28). She admitted that she sent him those images over Facebook. ROA.174 (PSR ¶ 28).

## II.   Procedural history.

### A.   Indictment and guilty plea.

In September 2019, a grand jury returned a three-count indictment

against McGavitt. ROA.31–34.

Count 1 charged that, on or about November 1, 2018, through April 13, 2019, he committed coercion and enticement of Minor Victim No. 1 to engage in criminal sexual activity—specifically, rape for sexual intercourse with a person who is less than 14 years of age, Ark. Code § 5-14-103—in violation of 18 U.S.C. § 2422(b). ROA.32–33.

Count 2 charged that, on or about November 1, 2018, through on or about May 26, 2019, McGavitt committed sexual exploitation of a child, namely Minor Victim No. 1, for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a), (e). ROA.33.

Count 3 charged that, on or about August 14, 2019, he committed possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). ROA.33–34.

In March 2020, McGavitt knowingly, intelligently, and voluntarily pled guilty to all three counts, without a plea agreement. ROA.85–114 (re-arraignment). As part of this plea, McGavitt agreed to a factual basis that established his sexual relationship with Minor Victim No. 1, supported by her confession, their Facebook accounts, his cell phone, and his trip to Arkansas in April 2019. ROA.104–11.

## B.    PSR.

Using the 2018 Sentencing Guidelines, the probation officer prepared the PSR.  ROA.167; *see* ROA.177 (PSR ¶ 40). The probation officer determined that McGavitt's Guidelines range was life imprisonment, based on a total offense level of 43 and criminal history category of I. ROA.182 (PSR ¶ 79).

For the offense level, the probation officer grouped Counts 1, 2, and 3 under U.S.S.G. § 3D1.2(b), (c). ROA.177 (PSR ¶ 41). The combined offense level for all the counts of conviction was based on Count 2, the count with the highest total offense level in the group. ROA.177 (PSR ¶ 42); *see* U.S.S.G. § 3D1.3 cmt. n.2. The probation officer made the following offense level calculations:

| PSR | U.S.S.G. | Description | Level |
|-----|----------|-------------|-------|
| ¶ 43 | § 2G2.1(a) | Base offense level for exploitation of a child for the purpose of producing child pornography, in violation of § 2251(a), (e). | 32 |
| ¶ 44 | § 2G2.1(b)(1)(B) | The offense involved a minor who had attained the age of 12 years but not the age of 16 years. | +2 |
| ¶ 45 | § 2G2.1(b)(2)(A) | The offense involved commission of a sexual act or sexual contact. McGavitt drove to Arkansas in | +2 |

| | | April 2019 to rape Minor Victim No. 1. | |
|---|---|---|---|
| ¶ 46 | § 2G2.1(b)(3) | The offense involved knowingly engaging in distribution of child pornography, including aiding, abetting, inducing, and willfully causing its distribution. McGavitt enticed and coerced Minor Victim No. 1 to produce child pornography, including images and videos. At his request, she then distributed the illicit material to him via Facebook and his cell phone. | +2 |
| ¶ 47 | § 2G2.1(b)(4)(A) | The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. | +4 |
| ¶ 48 | § 2G2.1(b)(6)(B)(ii) | The offense involved the use of a computer or interactive computer service to solicit participation with a minor in sexually explicit conduct. | +2 |
| ¶ 53 | § 4B1.5(b)(1) | The offense was a covered sex crime, neither § 4B1.1 nor § 4B1.5(a) applied, and McGavitt engaged in a pattern of activity involving prohibited sexual conduct. | +5 |
| ¶ 54 | § 3E1.1(a), (b) | Acceptance of responsibility | -3 |
| ¶ 55 | ch. 5, pt. A, cmt. n.2 | The total offense level is 46, but because it is in excess of 43, it is | =43 |

| | | treated as a total offense level of 43. | |
|---|---|---|---|

ROA.177–78 (PSR ¶¶ 39–55). From this, the probation officer assessed McGavitt's total offense level as 43. ROA.177–78 (PSR ¶¶ 39–55).

### C.    Objections to the PSR.

McGavitt filed written objections to the PSR. ROA.161–66. First, he challenged the sexual act enhancement under § 2G2.1(b)(2)(A), arguing that insufficient evidence showed that he had sexual intercourse with Minor Victim No. 1. ROA.161–63; *see* ROA.171, 174, 177 (PSR ¶¶ 9, 28–29, 45).[6]

Second, McGavitt challenged the sadism enhancement under § 2G2.1(b)(4)(A), contending that "the described video images do not depict conduct that an objective observer would perceive as causing the victim in the image physical or emotional pain contemporaneously with the image's creation." ROA.163–64; *see* ROA.174, 178 (PSR ¶¶ 29, 47).

---

[6] Although McGavitt stated that he objected to the "2-level enhancement under 2G2.1(b)(1)(B) related to having sexual intercourse with complainant (Paragraphs 9, 28, 29, 45)," this objection appears to relate to the 2-level enhancement under § 2G2.1(b)(2)(A), given his assertions and cited PSR paragraph numbers. ROA.161–63.

Third, he challenged the pattern of prohibited sexual conduct increase under § 4B1.5(b)(1), asserting that there was only one victim and "the offense conduct guidelines already adequately account for [his] conduct." ROA.164; *see* ROA.178 (PSR ¶ 53).[7] At the same time, McGavitt acknowledged that this Court and other circuits had applied the § 4B1.5(b)(1) increase to factual situations similar to his case. ROA.164.

Fourth, McGavitt challenged the inclusion of his pending charge in Texas for aggravated sexual assault of a child under the age of 14 involving a separate victim. ROA.164–65; *see* ROA.179 (PSR ¶ 60).

### D.   PSR addendum.

In the PSR addendum, the probation officer addressed McGavitt's objections. ROA.189–92. First, the probation officer confirmed the § 2G2.1(b)(2)(A) enhancement applied because McGavitt pled guilty to Count 1 and his phone messages support that he had a "sexual encounter" with Minor Victim No. 1 in April 2019. ROA.190.

Second, the probation officer verified the § 2G2.1(b)(4)(A) enhance-

---

[7] McGavitt raised three "[c]orrections" to PSR paragraphs 10, 33, 81, which are irrelevant to this appeal. ROA.161. In the PSR addendum, the probation officer noted that none of the resulting revisions impacted McGavitt's Guidelines range. ROA.189–90.

ment applied because "it [was] reasonable to determine that a child inserting a hairbrush into her vagina could cause her physical or emotional pain." ROA.190–91.

Third, the probation officer confirmed the § 4B1.5(b)(1) increase applied based on the following: the number of images McGavitt had Minor Victim No. 1 produce for him, that he had sexual intercourse with Minor Victim No. 1 in April 2019, and that he had a pending charge in Texas for sexual assault of a child under the age of 14 involving a separate victim. ROA.191.

Fourth, the probation officer verified including McGavitt's pending charge in Texas for sexual assault of a child under the age of 14 involving a separate victim, given the reporting by this victim and the charge falling under his criminal history. ROA.192.

### E.    PSR second addendum (Minor Victim No. 1's letter).

The PSR second addendum included a letter by Minor Victim No. 1, which detailed her sexual relationship with McGavitt. According to Minor Victim No. 1, she "was a 12 almost 13 year old girl" whom McGavitt singled out while playing online. ROA.222. He said that he was 16 years old—"about 30 to 35 years younger than [he] actually [was]."

ROA.222. He then demanded that she create a Facebook account, so they could communicate. ROA.222.

Soon, McGavitt became "very demanding," he "threatened [Minor Victim No. 1's] life," and "[a]lmost everything [he] wanted from [her] was sexual." ROA.222, 225. She "[couldn't] count the number of pictures [he] wanted [her] to send, or the number of videos." ROA.225. "[E]very single night, [he] would ask why [she] was still clothed." ROA.225. She would "never forget the night that [she] was supposed to put a butter knife in an area [she] won't mention because [he] said [she] had been a bad girl." ROA.225–26. In a few months, she changed from a "free bubbly carefree girl" to "isolated, depressed and suicidal." ROA.226. He promised to marry her, showed her weddings rings, and said he wanted four kids— three girls and one boy. ROA.229. She began slitting her wrists and even cut her legs 42 times in one night. ROA.229–30.

Minor Victim No. 1 described McGavitt's visit. ROA.231–33. As she was leaving church, he grabbed her through a hole in a wood fence and "raped [her]." ROA.231. Afterward, she was seen by her youth pastor in the parking lot and picked up by her father. ROA.231. That night, he said he had a "great time" and asked to see her again. ROA.232. She later

found out that he had "tried to come down [her] driveway and [he] had run off the road and gotten [his] truck stuck in the ditch." ROA.232. The next day, in her barn, he "dragged [her] by [her] arm into the room beside [their] stall and raped [her] again for 45 minutes." ROA.232–33. He said, "I hope you are ready to be a mother." ROA.233. As a result of her experience, she was put in a behavioral hospital. ROA.233. To this day, she "still [doesn't] feel safe in [her] own home." ROA.234. The letter concluded: "You may have made me fall, but you didn't break me." ROA.235.

**F.    Sentencing.**

At sentencing, the district court began by ruling on the PSR objections. ROA.115–25. The Government argued that the contested enhancements and increase were supported by credible evidence in the PSR and Minor Victim No. 1's "detailed and descript[ive]" letter. ROA.122–24. In particular, the Government argued, this evidence showed that "not only did [McGavitt] engage in sexual intercourse with this child, or sex acts with this child that meet the definition, but he caused her to put foreign objects inside her body, into orifices that are considered sexual by definition, and that [] is sexual conduct." ROA.123. And regardless of whether an outcry occurred, the Government argued, "[i]n their inherent nature

it can be found to constitute sadomasochistic conduct." ROA.123–24.

Afterward, the district court overruled McGavitt's objections under § 2G2.1(b)(2)(A), § 2G2.1(b)(4)(A), and § 4B1.5(b)(1). ROA.124. The court found, by a preponderance of the evidence, that "he did have sexual intercourse with [Minor Victim No. 1] based upon the victim-impact letter, which [the court] read, from the victim herself, in which she alleges two instances of sexual intercourse." ROA.124; *see* ROA.222–35 (letter). The court also ruled that it would not consider McGavitt's pending charge in Texas for sexual assault of a child under the age of 14. ROA.124.

The district court adopted the PSR and determined McGavitt's Guidelines range was life imprisonment, based on a total offense level of 43 and criminal history category of I. ROA.125; *see* ROA.236 (adopting the PSR without change). The court listened to an oral reading of Minor Victim No. 1's letter. ROA.126–38; *see* ROA.222–35 (letter).

Subsequently, the district court heard from the parties regarding the sentence. ROA.138–47. The Government requested a within-Guidelines-range sentence of life imprisonment, based on McGavitt's "heinous, abhorrent, cruel, hateful" sexual activity upon a child. ROA.138–41. By contrast, he asked for a below-Guidelines-range sentence. ROA.142–43.

Following McGavitt's allocution, the district court imposed the following: life imprisonment as to Count 1, 360 months' imprisonment as to Count 2, and 120 months' imprisonment as to Count 3—all terms to be served concurrently for a total term of life imprisonment. ROA.144; *see* ROA.236–39 (statement of reasons). In doing so, it found "that a sentence within the guidelines [was] consistent with and [took] into account all the purposes of [18 U.S.C. § 3553(a)]." ROA.144. McGavitt objected to the sentence, which the court overruled. ROA.150. This appeal followed.

## SUMMARY OF ARGUMENT

The district court correctly sentenced McGavitt within his Guidelines range to life imprisonment, based on a total offense level of 43 and criminal history category of I.

**Issue I.** The district court properly applied the sadism enhancement under § 2G1.1(b)(4)(A). Ample evidence supported this enhancement. McGavitt's cell phone contained a video of 12-year-old Minor Victim No. 1 repeatedly inserting a sizeable, hard-plastic hairbrush handle into her vagina, which she produced and sent at his behest. The court reasonably determined that an objective observer would perceive her as suffering physical or emotional pain contemporaneous with this image's creation. This objective assessment is bolstered by Minor Victim No. 1's description of a similar instance of degrading and humiliating sexual self-penetration with a foreign object caused by McGavitt.

Moreover, the district court's conclusion aligns with established precedents. This Court and its sister circuits consistently have upheld the sadism enhancement for images depicting the penetration of minors by foreign objects or adult males. The district court's reasonable determination is a factual finding afforded deference by this Court. Thus, the

district court committed no error, clear or otherwise.

**Issue II.** McGavitt concedes that his distribution challenge is reviewed for plain error. First, the district court correctly found that he engaged in distribution, based on the plain language of the Guidelines. Under the undisputed facts, Minor Victim No. 1 produced and sent three child pornography images of herself to McGavitt at his behest. This fell under the definition of distribution, which encompasses any act, including production and transmission related to the transfer of material involving the sexual exploitation of a minor. It closely tracked the Guidelines commentary, under which distribution occurs if the defendant aided, abetted, counseled, commanded, induced, procured, or willingly caused the distribution, as well as conspired to distribute. And this activity fell under McGavitt's relevant conduct, which covers all acts committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by him that occurred during the commission of the offense of conviction.

On appeal, McGavitt incorrectly contends the distribution enhancement requires that he personally—rather than Minor Victim No. 1—

transfer the child pornography to another person or makes them available for public viewing. This contention is refuted by the plain language of the Guidelines, and McGavitt obtains no aid from his cited authorities. As such, the district court did not err.

Second, McGavitt cannot show clear or obvious error. The Guidelines support application of the enhancement. His cited authorities do not contradict the district court's ruling; nor do they constitute binding precedent.

Third, McGavitt cannot demonstrate that his substantial rights were affected. Even if he somehow prevailed on the 2-level distribution enhancement, his ensuing total offense level would be 44—which still would be treated as an offense level of 43 and still would result in a Guidelines range of life imprisonment. Because his Guidelines range would remain the same, and the district court imposed a within-Guidelines-range sentence, any error would be harmless.

Fourth, this Court should not exercise its discretion to reverse the district court. McGavitt fails to provide the required case-specific and fact-intensive basis to support his assertion that remedying the error would clarify sentencing procedures. Consequently, the district court

committed no error, plain or otherwise.

**Issue III.** McGavitt concedes that his sexual act challenge is reviewed for plain error. First, the district court rightly found that his relevant conduct encompassed a sexual act, based on the plain language of the Guidelines. Under the undisputed facts, McGavitt traveled to Arkansas and raped Minor Victim No. 1 in April 2019. This was a sexual act because it included contact between the penis and the vulva, as well as the intentional touching of the genitalia of another person who has not attained the age of 16 years with the required sexual intent. Further, this constituted sexual contact because it included intentional touching either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

McGavitt's challenges this enhancement on three grounds, all of which are meritless. Firstly, the district court properly considered his rape of Minor Victim No. 1 under his relevant conduct for Count 2. This is because the rape constituted an act that occurred during the commission of or in preparation for that offense. Secondly, no double counting

occurred. The district court grouped McGavitt's counts together, pursuant to the Guidelines, precisely because the rape conduct embodied in Count 1 was treated as a specific characteristic under the sexual act enhancement for Count 2. Thirdly, the district court correctly applied the Guidelines grouping rules to McGavitt's case. In doing so, it: (1) initially calculated the base offense level for each count, (2) next applied the enhancements for each count, and (3) last grouped the counts using the one with the highest total offense level. Hence, the district court did not err.

Second, McGavitt cannot show clear or obvious error. The Guidelines support application of the enhancement, and his cited authorities do not contradict the district court's ruling.

Third, McGavitt cannot demonstrate that his substantial rights were affected. Even if he somehow prevailed on the 2-level distribution enhancement, his resulting total offense level would be 44—which still would be treated as an offense level of 43 and still would result in a Guidelines range of life imprisonment. Because his Guidelines range would remain unchanged, and the district court imposed a within-Guidelines-range sentence, any error would be harmless.

Fourth, this Court should not exercise its discretion to reverse the

district court. For one, McGavitt fails to provide the required case-specific and fact-intensive basis to support his assertion that remedying the error would clarify sentencing procedures. For another, he does not contest that he, in fact, raped Minor Victim No. 1, which met the requirements for the sexual act enhancement. Accordingly, the district court committed no error, plain or otherwise.

# ARGUMENT

## I.  The district court did not clearly err in applying the sadism enhancement under U.S.S.G. § 2G2.1(b)(4)(A).

McGavitt challenges his 4-level enhancement for portraying sadistic or masochistic conduct or other depictions of violence under § 2G2.1(b)(4)(A). Appellant's Br. 13–21, 26–28. He complains that no objective observer could find that the video of Minor Victim No. 1 inserting a hairbrush handle into her vagina, produced at his request, caused her physical or emotional pain contemporaneous with its creation. *Id.* at 13–21 (citing *United States v. Nesmith*, 866 F.3d 677 (5th Cir. 2017)). This complaint is without merit.

### A.  The standard of review is clear error.

Where a defendant preserved his challenge below, this Court reviews the district court's interpretation of the Sentencing Guidelines *de novo* and its findings of fact and application of the Guidelines to the specific facts of the case for clear error. *United States v. Lyckman*, 235 F.3d 234, 237 (5th Cir. 2000). Because McGavitt objected below to the sadism enhancement, this standard applies. ROA.163–64.

McGavitt's particular challenge, however, pertains only to the district court's factual finding and application of the Guidelines to the specific facts of his case—which is reviewed for clear error. *See United States v. Cloud,* 630 F. App'x 236, 238–39 (5th Cir. 2015)[8] (applying clear review to the district court's sadism determination that the conduct was humiliating and degrading to the minor victim). To show clear error, this Court must be "left with the definite and firm conviction that a mistake has been committed." *United States v. Odom*, 694 F.3d 544, 547 (5th Cir. 2012). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* McGavitt fails to meet this standard.[9]

## B.    The sadism enhancement was properly applied.

The district court properly applied the sadism enhancement. Section 2G2.1(b)(4)(A) requires a 4-level enhancement when the "offense involved material that portrays . . . sadistic or masochistic conduct or other depictions of violence." For this enhancement, an image must "depict[] conduct that an objective observer would perceive as causing the victim

---

[8] Unpublished opinions, though nonprecedential, may be persuasive authority. *E.g., United States v. Olivares*, 833 F.3d 450, 453 n.1 (5th Cir. 2016) (per curiam).
[9] Although McGavitt's § 2G2.1(b)(4)(A) challenge should be reviewed for clear error, it fails even under *de novo* review, for the same reasons discussed below.

in the image physical or emotional pain contemporaneously with the image's creation." *Nesmith*, 866 F.3d at 681. This inquiry focuses on "an observer's view of the image—what is portrayed and depicted—rather than the viewpoint of either the defendant or the victim." *Id.* at 680 & n.2 (holding that the same standard applies to both § 2G2.1(b)(4) and § 2G2.2(b)(4) because "the language of these two provisions is identical").

For this enhancement, this Court looks to the relevant dictionary definitions: (1) "sadistic" as meaning the "infliction of pain upon a love object as a means of obtaining sexual release," "delight in physical or mental cruelty," and use of "excessive cruelty"; (2) "masochistic" as meaning "a tendency to gain or increase sexual gratification through the acceptance of physical abuse or humiliation"; and (3) "violence" as meaning the "exertion of any physical force so as to injure or abuse." *Lyckman*, 235 F.3d at 238 & n.19.

This enhancement is warranted when the sexual act depicted is "likely to cause pain in one so young." *Cloud*, 630 F. App'x at 238. This Court has upheld this enhancement for "pornographic images depicting bondage or the insertion of foreign objects into the body canals of a child," though "such images hardly exhaust the malevolent universe of sexual

violence against children." *Id.* at 238–39. Images portraying sexual pen-
etration of a child by an adult male are deemed sadistic and violent. *Id.*

More broadly, this Court has "not limited pain to the physical type."
*Cloud*, 630 F. App'x at 238; *see Lyckman*, 235 F.3d at 239 ("[T]he conduct
depicted by the photographs caused the child pain, physical or emotional
or both, and therefore constitutes sadism or violence within the meaning
of the guidelines."); *see United States v. Comeaux*, 445 F. App'x 743, 745
(5th Cir. 2011) ("[A]n absence of physical pain is not per se outside the
ambit of the enhancement for sadistic acts under § 2G2.1(b)(4)"). In other
words, "[s]adistic conduct can include sexual gratification that is pur-
posefully degrading and humiliating to the victim." *United States v. De-
sadier,* 495 F. App'x 501, 502 (5th Cir. 2012).

Here, ample evidence supported the sadism enhancement.
McGavitt's cell phone contained a "video file that [was] 22 seconds in
length depicting [Minor Victim No. 1] who is 13 years of age, lying down
on a bed while completely nude. [Minor Victim No. 1], whose face is visi-
ble throughout the video, can be seen inserting the handle of a hairbrush
into her vagina." ROA.173 (PSR ¶ 24). The hairbrush handle was made
of hard plastic, and it was sizeable—measuring around three-quarters

inch in width, one inch in height, and five inches in length. *See* ROA.173 (PSR ¶ 24). It was inserted not once, but multiple times, into Minor Victim No. 1's vagina. *See* ROA.173 (PSR ¶ 24). And this sexually explicit video was produced and sent by Minor Victim No. 1 to McGavitt, at his behest. ROA.172, 174 (PSR ¶¶ 19, 28).

From this, the district court "reasonabl[y] [] determine[d] that a child inserting a hairbrush into her vagina could cause her physical or emotional pain." ROA.190. Put differently, the court found the images "depict[ed] conduct that an objective observer would perceive as causing the victim in the image physical or emotional pain contemporaneously with the image's creation"—a direct application of *Nesmith*, 866 F.3d at 681. *Contra* Appellant's Br. 16–19.[10] This objective assessment is bolstered by Minor Victim No. 1's description of a similar instance of degrading and humiliating sexual self-penetration caused by McGavitt: "I will never forget the night that I was supposed to put a butter knife in an area I won't mention because you said I had been a bad girl." ROA.225–26. In

---

[10] To the extent that McGavitt argues that the district court erred because it failed to specifically cite *Nesmith*, this argument fails. This is because "in the busy day-to-day world of a district court sentencing courtroom, we have been loath to demand 'magic words' or 'robotic incantations' from district judges." *United States v. Vega-Garcia*, 893 F.3d 326, 328 (5th Cir. 2018) (citing *United States v. Fraga*, 704 F.3d 432, 439 (5th Cir. 2013)). As discussed, the record shows that the right standard was applied.

short, Minor Victim No. 1's repeated vaginal self-penetration using a sizeable, hard-plastic hairbrush handle was "likely to cause pain in one so young." *Lyckman*, 235 F.3d at 238. The sadism enhancement should be upheld.

Moreover, the district court's reasonable determination aligns with established precedents. This Court and its sister circuits consistently have upheld the sadism enhancement for images depicting the penetration of minors by foreign objects or adult males.

"Although our cases upholding applications of [the sadism enhancement] have all involved pornographic depicting bondage or *the insertion of foreign objects into the body canals of a child*, such images hardly exhaust the malevolent universe of sexual violence against children." *Lyckman*, 235 F.3d at 238–39 & n.21 (emphasis added) (citing *United States v. Canada*, 110 F.3d 260, 264 (5th Cir. 1997); *United States v. Kimbrough*, 69 F.3d 723, 733 (5th Cir. 1995)). Further, "in this circuit, precedent supports that sexual penetration of a child is, by law, sadistic conduct . . . It reasonably follows that sexual penetration of a child by herself would be masochistic conduct." *United States v. Ehret*, 807 F. App'x 330, 334 n.5 (5th Cir. 2020); *see Desadier*, 495 F. App'x at 502 ("the sexual penetration

31

of a child by an adult male is conduct that 'cause[s] . . . pain, physical or emotional or both, and therefore constitutes sadism or violence.' "). Indeed, this Court has upheld the sadism enhancement "even absent the depiction of penetration" because the child victim "was humiliated or debased." *Comeaux*, 445 F. App'x at 745–46 (declining to "descend into the abyss of deciding where or whether a line could be drawn delineating which types of penetration are per se sadistic or violence.").

Likewise, other circuits have held that "it is difficult to imagine that the sexual penetration with a foreign object of a minor female would not qualify as 'violence' even if self-inflicted" under the sadism enhancement. *United States v. Starr*, 533 F.3d 985, 1001–02 (8th Cir. 2008); *see, e.g.*, *United States v. Johnson*, 784 F.3d 1070, 1074–76 (7th Cir. 2015) (unpublished) (upholding the sadism enhancement for images of a minor girl inserting a screwdriver handle into her vagina); *United States v. Fuller*, 77 F. App'x 371, 384 & n.14 (6th Cir. 2003) (upholding the sadism enhancement for images of "sexual penetration of prepubescent girls" by a bottle); *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001) (upholding the sadism enhancement for images of "sexual penetration by a minor girl upon herself by using a large carrot"); *United States v. Garrett,*

190 F.3d 1220, 1222–24 (11th Cir. 1999) (upholding the sadism enhancement for images of a "minor girl inserting a glass soda bottle into her vagina"); *United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir. 1996) (upholding the sadism enhancement for images of a minor boy "having an unidentified object inserted into his anus").

In light of these precedents, the district court properly applied the sadism enhancement, based on the video depicting 12-year-old Minor Victim No. 1's repeated self-penetration of her vagina with a sizeable, hard-plastic hairbrush handle, produced at McGavitt's behest. ROA.172–74 (PSR ¶¶ 19, 24, 28). To such a young girl, this is no less painful (either physically or emotionally) than sexual penetration by an adult male, which has been deemed sufficient to support this enhancement. *See Lyckman,* 235 F.3d at 238–39. And the district court's conclusion is a factual finding afforded deference by this Court. *See Cloud,* 630 F. App'x at 238–39. Thus, the district court committed no error, clear or otherwise.

## II.    The district court did not plainly err in applying the distribution enhancement under U.S.S.G. § 2G2.1(b)(3).

McGavitt challenges the district court's application of the 2-level enhancement for distribution under § 2G2.1(b)(3). Appellant's Br. 21–22,

26–28. He contends this enhancement requires that he personally—rather than Minor Victim No. 1—transfer child pornography to another person or make these images available for public viewing. *Id.* This contention is unconvincing.

### A.    The standard of review is plain error.

McGavitt concedes that his distribution challenge is reviewed for plain error because he failed to preserve it below. Appellant's Br. 12–13; *see United States v. Girod*, 646 F.3d 304, 317 (5th Cir. 2011). "[T]he doctrine of plain error serves powerful institutional interests, including securing the role of the United States District Court as the court of first instance, as opposed to a body charged to make recommendations to appellate courts." *United States v. Jasso*, 587 F.3d 706, 710 (5th Cir. 2009).

To show plain error, McGavitt must demonstrate: (1) error; (2) that is plain, meaning clear or obvious; (3) that affects his substantial rights; and (4) that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (alteration in original). He cannot meet this "difficult" burden. *Id.*

**B.    The distribution enhancement was correctly applied.**

The district court correctly applied the distribution enhancement, based on the plain language of the Guidelines. "It is well established that our interpretation of the Sentencing Guidelines is subject to the ordinary rules of statutory construction. If the language of the guideline is unambiguous, our inquiry begins and ends with the plain meaning of that language." *United States v. Crittenden*, 372 F.3d 706, 708 (5th Cir. 2004).

Section 2G2.1(b)(3) requires: "If the defendant knowingly engaged in distribution, increase by 2 levels." Application Note 1 to Section 2G2.1 gives the definition for "distribution":

> "Distribution" means any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

In particular, this definition encompasses "any act, including . . . production, transmission . . . related to the transfer of material involving the sexual exploitation of a minor." *Id*.

Courts have interpreted Application Note 1 in § 2G2.1 as "broadly defining 'distribution.' " *United States v. Hernandez*, 894 F.3d 1104, 1108

(9th Cir. 2018) (quoting *United States v. Grzybowicz*, 747 F.3d 1296, 1311–12 (11th Cir. 2014)). "[T]he term 'any' at the outset of the first sentence of the definition of 'distribution' in Application Note 1 [of the Sentencing Guidelines] 'is a term of great breadth.' " *Id.* (citing *United States v. Hecht*, 470 F.3d 177, 182–83 (4th Cir. 2006)); *see United States v. Clayton*, 613 F.3d 592, 596 (5th Cir. 2010) (" 'any' . . . [is] a term we must construe as 'broad' and 'ha[ving] an expansive meaning.' "). And "the phrase 'related to' as it appears in the definition of 'distribution' [under § 2G2.1] evokes similar breadth." *Id.* Indeed, "there are myriad methods to produce, transmit, share, and exchange sexually explicit material" that constitute distribution under the Guidelines—several of which apply to McGavitt's case. *Id.* at 1109.

More importantly, Application Note 3 to Section 2G2.1 provides clarification as to what constitutes distribution:

> For the purposes of subsection (b)(3), the defendant "knowingly engaged in distribution" if the defendant (A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute.

Specifically, the defendant engaged in distribution under § 2G2.1(b)(3) if he: "(B) aided, abetted, counseled, commanded, induced, procured, or

willingly caused the distribution, or (C) conspired to distribute." § 2G2.1 cmt. n.3.

Correspondingly, the Sentencing Guidelines determine a defendant's "applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.2(b). Under a defendant's relevant conduct, his specific offense characteristics "shall be determined" based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A); *see* U.S.S.G. § 1B1.1 cmt. n.1(I) (defining a defendant's "offense" as meaning "the offense of conviction and all relevant conduct under §1B1.3 (Relevant Conduct)").

In this case, the district court correctly determined that McGavitt's relevant conduct comprised distribution under § 2G2.1(b)(3). The facts are undisputed. Minor Victim No. 1 sent him a total of three images of child pornography of herself on April 30, May 2, and May 3, 2019, respectively. ROA.172 (PSR ¶¶ 15–16). These images were accompanied by an exchange of sexually explicit Facebook messages. ROA.172 (PSR ¶ 16). On May 2, Minor Victim No. 1 said: "I don't know maybe it just cuz I'm

pretty tiny for a 14 year old." ROA.172 (PSR ¶ 16). The next day, McGavitt stated: "Let me see ur p\*\*sy open ur p\*\*sy." ROA.172 (PSR ¶ 16). Minutes later, Minor Victim No. 1 responded by "sending an image depicting a minor female with her hand rubbing her vagina." ROA.172 (PSR ¶ 16).

From this, the district court correctly concluded that the distribution enhancement applied. ROA.177 (PSR ¶ 46). First, it determined that McGavitt "enticed and coerced [Minor Victim No. 1] to produce child pornographic materials including images and videos" and that she "then distributed the material through [Facebook] to his cellular telephone at his request." ROA.177 (PSR ¶ 46). This fell under the definition of "distribution," which encompasses "any act, including . . . production, transmission . . . related to the transfer of material involving the sexual exploitation of a minor." § 2G2.1 cmt. n.1. Second, the court found that McGavitt "knowingly engaged in distribution of child pornography (including aiding, abetting, inducing and willfully causing the distribution)." ROA.177 (PSR ¶ 46). This closely tracked the Guidelines commentary, which provides that the defendant committed distribution under § 2G2.1(b)(3) if he "aided, abetted, counseled, commanded, induced, procured, or willingly

38

caused the distribution." § 2G2.1 cmt. n.3(B). Further, McGavitt and Minor Victim No. 1 agreed for her to produce and send him the child pornography, which indicates that they "conspired to distribute." § 2G2.1 cmt. n.3(C). And this activity fell under McGavitt's relevant conduct, which covers "all acts . . . committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by [him] . . . that occurred during the commission of the offense of conviction " § 1B1.3(a)(1)(A). As a result, based on the plain text of the Guidelines, McGavitt committed distribution under § 2G2.1(b)(3). *See Hernandez*, 894 F.3d at 1107–08 (holding that the district court's distribution finding "follow[ed] directly from the text of the definition in the Guidelines").

On appeal, McGavitt contends the distribution enhancement requires that *he personally*—rather than Minor Victim No. 1—"transfer[] the images of the sexual exploitation of a minor to another person or otherwise [make] them available for public viewing." Appellant's Br. 22. Therefore, he contends, his "request and receipt of images produced by the young teen [was] insufficient to support application of the enhancement." *Id.* (citing *United States v. King*, 979 F.3d 1075, 1083 n.3 (5th Cir.

2020); *United States v. Merrill*, 578 F. Supp. 2d 1144, 1151–53 (N.D. Iowa 2008)). He is wrong.

As an initial matter, McGavitt's contention is refuted by the plain language of the Guidelines. Minor Victim No. 1 produced and sent him child pornography of herself *at his behest*. ROA.172, 177 (PSR ¶¶ 15–16, 46). As discussed, McGavitt "aided, abetted, counseled, commanded, induced, procured, or willingly caused the distribution" and "conspired to distribute"—two circumstances that do not require him to personally transfer the child pornography. § 2G2.1 cmt. n.3(B), (C). Also, this criminal activity fell under McGavitt's relevant conduct, which covered "all acts . . . committed aided, abetted, counseled, commanded, induced, procured, or willfully caused [him]." § 1B1.3(a)(1)(A).

Furthermore, McGavitt obtains no aid in *King*. There, the defendant was a pastor at the victim's church who pled guilty to possessing child pornography and received a 360-month sentence. *King*, 979 F.3d at 1077–79. The defendant appealed, challenging his conviction and sentence, including the distribution enhancement. *Id.* at 1079–83. The *King* Court affirmed but declined to reach the distribution issue because any such error would have been harmless. *Id.* at 1083. In a dicta footnote, however,

40

it discussed the Government's distribution argument, based on the defendant emailing child pornography to himself from his cell phone to his flash drive. *Id.* at 1083 n.3. The *King* Court observed: "there [was] no evidence in the record that suggests [the defendant] transferred the images to another person or otherwise made them available for public viewing, or that his cell phone or flash drive were ever outside his sole possession." *Id.*

*King* is inapt. First, footnote 3 is dicta because the *King* Court explicitly declined to rule on the distribution enhancement. *See id.* at 1083. Second, the *King* Court expressed skepticism because the distribution enhancement rested solely upon the defendant's self-transfer of child pornography, instead of to another person or made available for public viewing. *Id.* at 1083 n.3. On the contrary, McGavitt's distribution enhancement does not involve the self-transfer of child pornography. The images undisputedly were transferred from one person to another: they were produced and sent by Minor Victim No. 1 to McGavitt at his behest. Third, the issue in McGavitt's case is whether this activity falls under the plain text of the Guidelines, which it does under §§ 1B1.3(a)(1)(A), 2G2.1 cmt. n.1, 2G2.1 cmt. n.3(B), (C). By contrast, *King* does not address this issue;

nor does it contradict the district court's result.[11] As such, the district court did not err.

## C. Even assuming legal error, the distribution enhancement did not constitute clear or obvious error.

Even assuming legal error, McGavitt cannot show that the distribution enhancement constituted plain error, meaning "clear or obvious rather than subject to reasonable dispute." *United States v. Alvarado-Martinez*, 713 F. App'x 259, 265 (5th Cir. 2017) (quoting *Puckett*, 556 U.S. at 135). Under this second prong, this Court is "reluctant to find plain error when no binding precedent contradicts the district court's holding." *Id.* (citing *United States v. Garcia–Gonzalez*, 714 F.3d 306, 318 (5th Cir. 2013)). "[E]ven where an argument merely requires extending existing precedent, the district court's failure to do so cannot be plain error." *Jimenez v. Wood Cty., Tex.*, 660 F.3d 841, 847 (5th Cir. 2011) (en banc). The error must have been clear or obvious under current law at the time

---

[11] For the same reasons, McGavitt finds no help in *Merrill,* an out-of-circuit, lower-court decision. In *Merrill*, the defendant emailed 15 images of child pornography from his cell phone to his home computer. 578 F. Supp. 2d at 1147, 1150. The district court rejected the distribution enhancement because it rested solely upon the defendant's self-transfer of child pornography, rather than to another person or made them available for public viewing. *Id.* at 1150–53 ("he simply copied his stash of child pornography from one electronic device to another"). By contrast here, the child pornography undisputedly was transferred from one person to another: the images were produced and sent by Minor Victim No. 1 to McGavitt at his behest.

of the appeal. *United States v. Escalante-Reyes*, 689 F.3d 415, 418, 422–23 (5th Cir. 2012) (en banc). McGavitt fails to meet this burden.

McGavitt points to no contradictory precedent. As indicated, the plain language of the Guidelines supports the distribution enhancement. *See supra* Section II.B. His cited authorities do not contradict the district court's ruling. *King* and *Merrill* involve the transfer of child pornography by a defendant only to himself, whereas the instant case involves the undisputed transfer of child pornography by Minor Victim No. 1 to McGavitt at his behest. *See id.*; *United States v. Olea-Rivera*, 318 F. App'x 292, 294 (5th Cir. 2009) (rejecting the defendant's sentencing challenge under the second prong of plain error because "there is no precedent in this circuit to that effect"). In fact, neither of McGavitt's cited authorities even constitutes binding precedent: *King's* footnote 3 is dicta and *Merrill* is an out-of-circuit, lower court decision. For him to prevail, this Court would not be merely extending precedent, it would be creating new law. There is no clear or obvious error.

### D. Even assuming obvious error, the distribution enhancement did not affect McGavitt's substantial rights.

Even assuming obvious error, McGavitt cannot establish that it affected his "substantial rights, that is, that it affected the outcome of the

district court proceedings." *United States v. Bohuchot*, 625 F.3d 892, 899 (5th Cir. 2010). Under this third prong, the defendant must show a "reasonable probability that, but for the district court's error, [he] would have received a lesser sentence." *United States v. Velasquez*, 825 F.3d 257, 259 (5th Cir. 2016). McGavitt fails to meet this burden.

In the present case, McGavitt contests the 2-level distribution enhancement under § 2G2.1(b)(3). The district court found that his total offense level was 46, which was treated as an offense level of 43 and resulted in a Guidelines range of life imprisonment. ROA.178 (PSR ¶ 55), ROA.125; *see* U.S.S.G. ch. 5 pt. A. cmt. n.2. The court then found "that a sentence within the guidelines [was] consistent with and [took] into account all the purposes of [§ 3553(a)]." ROA.144.

But even if McGavitt prevailed on the 2-level distribution enhancement, his ensuing total offense level would be 44—which *still* would be treated as an offense level of 43 and *still* would result in a Guidelines range of life imprisonment. *See* U.S.S.G. ch. 5 pt. A. cmt. n.2. Because his Guidelines range would remain the same, and the district court imposed a within-Guidelines-range sentence, any error would be harmless. *See King*, 979 F.3d at 1081–83 (holding that any error regarding the 2-level

distribution enhancement was harmless because the defendant's total offense score of 46 was "off the charts" and "his Guidelines range would not be affected"); *United States v. Nimerfroh*, 716 F. App'x 311, 316 (5th Cir. 2018) (holding that "any error by the district court was harmless because [the defendant] would have received the same guidelines range . . . even without the importation enhancement").

McGavitt cannot show a reasonable probability that, but for the district court's alleged § 2G2.1(b)(3) error, he would have received a lesser sentence. *See Velasquez*, 825 F.3d at 259.[12] His substantial rights were not affected.

### E.    This Court should not exercise its discretion to reverse the distribution enhancement.

McGavitt cannot convince this Court to exercise its discretion to reverse the district court. If the first three prongs are satisfied, this Court has the discretion to remedy the error, which should only be exercised if

---

[12] Similarly, if McGavitt somehow prevailed on his 2-level distribution challenge plus his 2-level sexual act challenge (but not the 4-level sadism challenge), then his total offense level would be 42, yielding a Guidelines range of 360-months-to-life imprisonment. In this situation, he could not carry his burden under prong three because his life sentence still would fall within the Guidelines range, which the district court found was "consistent with and [took] into account all the purposes of 3553(a)" ROA.144; *see United States v. Randall*, 924 F.3d 790, 795 (5th Cir. 2019) ("under plain error review, the defendant has the burden of proving that an error did impact his substantial rights").

the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (cleaned up). This fourth prong should be applied on a "case-specific and fact-intensive basis." *Id.* at 142. A plain Guidelines error affecting substantial rights "ordinarily will satisfy [the] fourth prong," unless "countervailing factors" indicate otherwise. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908–09 (2018). The defendant, however, bears the burden of establishing this final prong. *United States v. Vonn*, 535 U.S. 55, 63 (2002).

McGavitt fails to meet this burden. He generally states that "[r]emedying the error 'would provide clarity and certainty regarding sentencing procedures in this circuit' "—and nothing else. Appellant's Br. 27–28 (quoting *Randall*, 924 F.3d at 796). He does not provide the required "case-specific and fact-intensive basis" to support this assertion. *Puckett*, 556 U.S. at 142. McGavitt gives no explanation as to how the remedy in his case would clarify this Court's sentencing procedures. This Court has refused to correct plain error where "the complaining party makes no showing as to the fourth prong." *United States v. Rivera*, 784 F.3d 1012, 1018 n.3 (5th Cir. 2015); *see United States v. O'Neal*, 742 F. App'x 836, 845 (5th Cir. 2018) (rejecting a Guidelines challenge on the same

grounds, despite *Rosales-Mireles*); *see also United States v. Mims*, No. 19-50921, 2021 WL 1220888, at *4 (5th Cir. Apr. 1, 2021) (refusing to correct a Guidelines calculation error under prong four). It should refuse to do so here.

Consequently, the district court committed no error, plain or otherwise.

## III. The district court did not plainly err in applying the sexual act enhancement under U.S.S.G. § 2G2.1(b)(2)(A).

McGavitt challenges his enhancement for committing a sexual act or conduct under § 2G2.1(b)(2)(A) on three grounds. Appellant's Br. 23–28. First, he disputes that the rape fell under his relevant conduct for Count 2. *Id.* at 23–25. Second, he argues that improper "double counting" occurred because the rape finding was connected to Count 1 but the offense of conviction was Count 2. *Id.* Third, he asserts that the district court incorrectly applied the Guidelines grouping rules. *Id.* McGavitt's arguments are without merit.

### A. The standard of review is plain error.

McGavitt concedes that his sexual act challenge is reviewed for plain error because he failed to preserve it below. Appellant's Br. 12–13; *see Girod*, 646 F.3d at 317.

To show plain error, McGavitt must demonstrate: (1) error; (2) that is plain, meaning clear or obvious; (3) that affects his substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. *Puckett* 556 U.S. at 135. He does not meet this "difficult" burden. *Id.*

### B.    The sexual act enhancement was rightly applied.

The district court rightly applied the sexual act enhancement, based on the plain language of the Sentencing Guidelines. *See Crittenden*, 372 F.3d at 708 ("If the language of the guideline is unambiguous, our inquiry begins and ends with the plain meaning of that language.").

Section 2G2.1(b)(2)(A) mandates: "If the offense involved . . . the commission of a sexual act or sexual contact, increase by 2 levels." The Guidelines define "sexual act" and "sexual conduct" according to the meanings in 18 U.S.C. § 2246(2), (3). § 2G2.1 cmt. n.2. "Sexual contact" includes "(A) contact between the penis and the vulva or the penis and the anus, however slight," and "(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or

arouse or gratify the sexual desire of any person." § 2246(2). "Sexual contact" includes "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." § 2246(3).

The Sentencing Guidelines determine a defendant's Guidelines range according to his relevant conduct. § 1B1.2(b). Under his relevant conduct, his specific offense characteristics "shall be determined" based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." § 1B1.3(a)(1)(A); *see* § 1B1.1 cmt. n.1(I) (defining a defendant's "offense" as meaning "the offense of conviction and all relevant conduct").

Here, the district court properly determined that McGavitt's relevant conduct encompassed a sexual act or contact under § 2G2.1(b)(2)(A). On appeal, he does not dispute that he and Minor Victim No. 1 had sexual intercourse in April 2019; nor does he contest that it constituted a sexual act or contact. *See* Appellant's Br. 23–25.

Even so, abundant evidence supports this rape finding, based on McGavitt's PSR and his admitted factual basis from re-arraignment. In

her letter, Minor Victim No. 1 described McGavitt's visit, during which he grabbed her through a fence near church and "raped her" and then "raped [her] again for 45 minutes" in the barn the next day. ROA.230–33. Minor Victim No. 1 told her parents that "in April of 2019, McGavitt traveled to Arkansas from Texas and engaged in sexual intercourse with [her]." ROA.105; *see* ROA.171 (PSR ¶ 9). Law enforcement confirmed this trip using records from an Arkansas tow truck company that assisted McGavitt when his F-150 was stuck near Minor Victim No. 1's driveway. ROA.109; *see* ROA.171, 174 (PSR ¶¶ 11, 26–27). And in her interview with law enforcement, Minor Victim No. 1 admitted to having sexual intercourse with McGavitt when he traveled from Texas to Arkansas. ROA.174 (PSR ¶ 28).

Crediting this evidence, the district court properly concluded that the sexual act enhancement applied. The court determined that McGavitt "drove to Arkansas on April 11, 2019, to have sexual intercourse with [Minor Victim No. 1], which [is] considered an act of rape." ROA.177 (PSR ¶ 45); *see* Ark. Code § 5-14-103 (rape for sexual intercourse with a person less than 14 years old). His rape of her was a "sexual act" because it involved "contact between the penis and the vulva or the penis and the

anus," as well as "the intentional touching . . . of the genitalia of another person who has not attained the age of 16 years" with the required sexual intent. § 2246(2)(A), (D). Further, it was "sexual contact" because it included "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." § 2246(3).

On appeal, McGavitt challenges the sexual act enhancement on three grounds. *Id.* First, he disputes that this rape fell under his relevant conduct for Count 2. *Id.* at 24. Second, McGavitt argues that there was improper "double counting" under U.S.S.G. § 3D1.2 cmt. n.5, because the offense of conviction was Count 2, but the rape finding only was connected to Count 1. *Id.* Third, he asserts that the district court incorrectly applied the Guidelines grouping rules, relying primarily on *United States v. Dickson*, 632 F.3d 186 (5th Cir. 2011). *Id.* McGavitt's arguments are unpersuasive.

### 1. McGavitt's rape of Minor Victim No. 1 fell under his relevant conduct for Count 2.

First, McGavitt misunderstands the "cornerstone" principle of relevant conduct. *United States v. Carreon*, 11 F.3d 1225, 1232 (5th Cir. 1994)

(citing William W. Wilkins & John R. Steer, *Relevant Conduct: The Cornerstone of the Sentencing Guidelines*, 41 S.C. L. Rev. 495, 496 (1990)).

The Guidelines define a defendant's "offense" as meaning "the offense of conviction and all relevant conduct under §1B1.3 (Relevant Conduct)." § 1B1.1 cmt. n.1(I). McGavitt's relevant conduct encompassed "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense." § 1B1.3(a)(1)(A).

McGavitt pled guilty to Count 2, which charged that, from November 2018 until May 2019, he committed sexual exploitation of Minor Victim No. 1, by enticement and coercion, to produce child pornography. ROA.33, 85–114. During this period, McGavitt and Minor Victim No. 1 had a sexual relationship, in which they engaged in "explicit communications" over Facebook on at least 19 different days from March 8, through May 22, 2019. ROA.171–72, 174 (PSR ¶¶ 9, 14, 28). This included Minor Victim No. 1 producing and transferring at least 3 images of child pornography of herself, at McGavitt's behest, in late April and early May.

ROA.172 (PSR ¶¶ 15–16). Squarely in the midst of these communications, on April 11, 2019, McGavitt traveled to Arkansas and then raped Minor Victim No. 1. ROA.171, 174 (PSR ¶¶ 11, 26–27). Even after this occurred, they continued to exchange sexually explicit messages over Facebook. ROA.171–72, 174 (PSR ¶¶ 9, 14, 28).

From this, the district court correctly found that McGavitt's relevant conduct for Count 2 covered his rape of Minor Victim No. 1. The rape was related to and occurring during their sexually explicit communications over Facebook, which included the production and transfer of child pornography of her, at his behest. The rape therefore fell under "all acts . . . that occurred during the commission of the offense of conviction." § 1B1.3(a)(1)(A). Also, given that the rape occurred a few weeks prior to the production and transfer of these pornographic images of Minor Victim No. 1, it fell under "all acts . . . that occurred . . . in preparation for that offense." § 1B1.3(a)(1)(A). Last, the district court's finding that McGavitt's relevant conduct for Count 2 encompassed his rape of her is a factual finding given deference by this Court. *See Lyckman*, 235 F.3d at 237. McGavitt's first ground fails.

### 2. McGavitt's rape of Minor Victim No. 1 was not double counted.

Second, the district court did not double count McGavitt's rape of Minor Victim No. 1. McGavitt's assertion—that including the rape finding connected to Count 1 as a specific offense characteristic of Count 2 constitutes improper double counting—distorts the Guidelines and defies logic. Appellant's Br. 24.

The Guidelines group multiple counts "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in . . . the guideline applicable to another of the counts. " § 3D1.2. "This provision *prevents* 'double counting' of offense behavior." § 3D1.2(c) cmt. n.5 (emphasis added).

At sentencing, the district court grouped McGavitt's counts together, pursuant to § 3D1.2(c), precisely *because* the rape conduct embodied in Count 1 was treated as a specific offense characteristic (under the sexual act enhancement) for Count 2. McGavitt fails to explain how any double counting occurred; nor can he point to where the rape was counted more than once in the Guidelines calculation. In fact, McGavitt's interpretation reads Section 3D1.2(c) entirely out of existence, because apply-

ing it would result in the very thing it is meant to prevent. This is con-

tradicted by the plain language of the provision, as well as an abundance

of precedents. *See, e.g., United States v. Segler*, 37 F.3d 1131, 1135 & n.8

(5th Cir. 1994) (upholding the grouping of multiple counts under

§ 3D1.2(c)); *United States v. Alford*, 812 F. App'x 291, 292 (5th Cir. 2020)

(same). McGavitt's second ground fails.

### 3.    The Sentencing Guidelines grouping rules were properly applied.

Third, the district court properly applied the Guidelines grouping

rules to McGavitt's case. As indicated, the Guidelines require grouping of

all counts that involve "substantially the same harm," which include:

> b)    When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constitution part of a common scheme or plan;

> c)    When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

§ 3D1.2. The Guidelines then provide rules to calculate the offense level

for grouped counts:

> When counts are grouped pursuant to § 3D1.2(a)–(c), the highest offense level of the counts in the group is used. Ordinarily, it is necessary to determine the offense level for each of the

> counts in the Group in order to ensure that the highest is cor-
> rectly identified. Sometimes, it will be clear that one count in
> the Group cannot have a higher offense level than an-
> other . . . The formal determination of the offense level for
> such a count may be unnecessary.

§ 3D1.3 cmt. n.2. In other words, after separately calculating the offense

level for each count, the "highest offense level of the counts in the group

is used." *Id.*

In this case, the district court correctly grouped and calculated

McGavitt's offense level. At the onset, the court grouped all three counts

under § 3D1.2(b) and § 3D1.2(c). ROA.177 (PSR ¶ 41). Section 3D1.2(b)

applied because all the counts were part of the same scheme of criminal

sexual conduct involving Minor Victim No. 1. Section 3D1.2(c) applied

because Count 1 embodied conduct, through the sexual act enhancement,

that was a specific offense characteristics of Count 2. Next, the court cal-

culated the offense level for the grouped counts: "When counts are

grouped, the offense level for all of the counts of conviction (the combined

offense level) is the offense level for the most serious of the counts com-

prising the group, *i.e.*, the count resulting in the highest offense level in

the group." ROA.177 (PSR ¶ 42). As a result, the court found that "Count

2 results in the highest offense level and becomes the count for the

group." ROA.177 (PSR ¶ 42). There was no error.

McGavitt's reliance on *Dickson* is misplaced. In *Dickson,* the defendant was convicted of possession (Count 1) and production (Count 2) of child pornography. 632 F.3d at 188. The district court grouped the two counts together because "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts" under § 3D1.2(c). *Id.* The district court determined that, because "count two (production) produced the highest base offense level, 32," it should be used as the offense level of the group for Guidelines purposes. *Id.* (citing § 3D1.3(a)). After the district court applied multiple enhancements, including the 4-level sadism enhancement, it imposed a sentence of 840 months' imprisonment. *Id.* On appeal, the defendant raised an unpreserved challenge to the sadism enhancement, arguing that the sadistic or masochistic images only pertained to his possession count, rather than his production count—which was used to determine the group's offense level. *Id.* at 190.

The *Dickson* Court affirmed on plain error review. *Id.* at 190–92. The *Dickson* Court determined that the district court erred in calculating the sentence. *Id.* at 190. Per the *Dickson* Court, the Guidelines "plainly

instruct a court to apply enhancements before grouping. The offense that produces the highest total offense level, not the highest base offense level, sets the level for the group." *Id.* at 190–91 (citing §§ 1B1.1(a)-(c), 3D1.3 cmt. n.2). Instead, the district court erroneously "first determined that production produced the highest base offense level and then, second, enhanced the total offense level for the group based on the sadistic or masochistic images [the defendant] possessed." *Id.* at 191. The *Dickson* Court, however, rejected the defendant's sadism challenge under the third prong of plain error because it did not affect his substantial rights. *Id.* at 191–92.

*Dickson*'s analysis is inapplicable. In *Dickson*, the Court determined that the district court acted incorrectly by: (1) initially calculating the base offense level for each count, (2) next grouping the counts using the one with the *highest base offense level*, and (3) last applying the pertinent enhancements. *Id.* at 188, 190–91. This violated the Guidelines grouping rules in § 3D1.3 cmt. n.2. *Id.* at 190–91. By contrast, in McGavitt's case, the district court acted correctly by: (1) initially calculating the base offense level for each count, (2) next applying the pertinent enhancements for each count, and (3) last grouping the counts using

58

the one with the *highest offense level*. ROA.177 (PSR ¶ 42); *see* § 1B1.1(a)(1)–(4). From this, the district court found that "Count 2 results in the *highest offense level* and becomes the count for the group." ROA.177(PSR ¶ 42) (emphasis added). This aligns with the Guidelines instruction that the "*highest offense level* of the counts in the group is used." § 3D1.3 cmt. n.2 (emphasis added). McGavitt's argument fails.

Another part of *Dickson*, however, is relevant—and it supports the Government's position. Following its analysis, the *Dickson* Court stated that the district court "could have considered the nature of the images [the defendant] possessed, albeit not in the erroneous way it did." 632 F.3d at 192. The *Dickson* Court declared: "In fashioning a sentence, a court may consider, as 'relevant conduct' acts in addition to those underlying the offense of conviction." *Id.* This included "all acts and omissions . . . that occurred during the commission of the offense of conviction." *Id.* (citing 1B1.3(a)(1)). Because the violent images and produced child pornography were on the same CD, the defendant "possessed the violent images 'during the commission' of his acts of production." *Id.* (citing § 1B1.3(a)(1)).

So too here. In fashioning its sentence, the district court "may consider, as 'relevant conduct' acts in addition to those underlying the offense of conviction." *Id.* This includes "all acts and omissions . . . that occurred during the commission of the offense of conviction." *Id.* (citing 1B1.3(a)(1)). As discussed, because McGavitt's rape of Minor Victim No. 1 occurred "during the commission" and "in preparation" of Count 2, the district court rightly considered this relevant conduct in applying the sexual act enhancement under § 2G2.1(b)(2)(A). McGavitt's third ground fails. Hence, the district court did not err.

## C.    Even assuming legal error, the sexual act enhancement did not constitute obvious error.

Even assuming legal error, McGavitt cannot show that the sexual act enhancement was plain error, meaning "clear or obvious rather than subject to reasonable dispute." *Alvarado-Martinez*, 713 F. App'x at 265. Under this second prong, this Court is "reluctant to find plain error when no binding precedent contradicts the district court's holding." *Id.* Even where a party's challenge simply extended existing precedent, the district court's failure to do so is not plain error. *Jimenez*, 660 F.3d at 847. The error must have been clear or obvious under current law at the time of the appeal. *Escalante-Reyes*, 689 F.3d at 418, 422–23. McGavitt fails to

60

meet this burden.

McGavitt points to no contradictory precedent. As mentioned, the plain language of the Guidelines supports the sexual act enhancement. *See supra* Section III.B. His cited authorities do not contradict the district court's ruling; his arguments are unsupported by Section 3D1.2 cmt. n.5 or *Dickson*. For McGavitt to prevail, this Court would not be merely extending precedent, it would be creating new law. *See Olea-Rivera*, 318 F. App'x at 294. There was no clear or obvious error.

## D. Even assuming obvious error, the sexual act enhancement did not affect McGavitt's substantial rights.

Even assuming obvious error, McGavitt cannot demonstrate that it affected his "substantial rights, that is, that it affected the outcome of the district court proceedings." *Bohuchot*, 625 F.3d at 899. Under this third prong, the defendant must show a "reasonable probability that, but for the district court's error, she would have received a lesser sentence." *Velasquez*, 825 F.3d at 259. McGavitt fails to meet this burden.

Here, McGavitt disputes the 2-level sexual act enhancement under § 2G2.1(b)(2)(A). The district court found that his total offense level was 46, which was treated as an offense level of 43 and resulted in a Guidelines range of life imprisonment. ROA.178 (PSR ¶ 55), ROA.125; *see*

U.S.S.G. ch. 5 pt. A. cmt. n.2. The court then found "that a sentence within the guidelines [was] consistent with and [took] into account all the purposes of [§ 3553(a)]." ROA.144.

But even if McGavitt prevailed on the 2-level sexual act enhancement, his resulting total offense level would be 44—which *still* would be treated as an offense level of 43 and *still* would result in a Guidelines range of life imprisonment. *See* U.S.S.G. ch. 5 pt. A. cmt. n.2. Because his Guidelines range would be unchanged, and the district court imposed a within-Guidelines-range sentence, any error would be harmless. *See Nimerfroh*, 716 F. App'x at 316; *Garcia-Gonzalez*, 714 F.3d at 315. McGavitt fails to demonstrate a reasonable probability that, but for the district court's alleged § 2G2.1(b)(2)(A) error, he would have received a lesser sentence. *See Velasquez*, 825 F.3d at 259.[13] His substantial rights were not affected.

### E. This Court should not exercise its discretion to reverse the sexual act enhancement.

McGavitt cannot persuade this Court to exercise its discretion to

---

[13] As stated, if McGavitt somehow prevailed on his 2-level sexual act challenge plus his 2-level distribution challenge (but not his 4-level sadism challenge), he still could not carry his burden under prong three. *See supra* note 12.

reverse the district court. Under prong four, this Court should only exercise its discretion if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (cleaned up). This should be applied on a "case-specific and fact-intensive basis." *Id.* at 142. A plain Guidelines error affecting substantial rights "ordinarily will satisfy [the] fourth prong," unless "countervailing factors" indicate otherwise. *Rosales-Mireles*, 138 S. Ct. at 1908–09. The defendant bears the burden of establishing this final prong. *Vonn*, 535 U.S. at 63.

McGavitt does not meet his burden. For one, he vaguely asserts that "[r]emedying this error would provide clarity or certainty regarding sentencing procedures." Appellant's Br. 27–28 (quotation marks omitted). But McGavitt fails to support this assertion with the required "case-specific and fact-intensive basis"—he provides no explanation as to how this remedy would achieve this result. *Puckett*, 556 U.S. at 142. Because "the complaining party makes no showing as to the fourth prong," this Court should decline to correct plain error here. *Rivera*, 784 F.3d at 1018 n.3; *see O'Neal*, 742 F. App'x at 845.

For another, the "focus of plain error review should be whether the

severity of the error's harm demands reversal, and not whether the district court's action . . . deserves rebuke." *Escalante-Reyes*, 689 F.3d at 423 (quotation marks omitted). McGavitt does not contest that he, in fact, raped Minor Victim No. 1, which met the requirements for the sexual act enhancement. *See* Appellant's Br. 24. Thus, any error in applying the enhancement under a technical grouping rule in the Guidelines does not "rise to the level of a grave injustice" warranting this Court's discretionary correction. *United States v. Flores*, 862 F.3d 486, 489 (5th Cir. 2017) (quotation marks omitted). Such an error does not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (cleaned up).

Accordingly, the district court committed no error, plain or otherwise.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

JENNIFER B. LOWERY
Acting United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

s/ Andrew C. Sand
ANDREW C. SAND
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

# CERTIFICATE OF SERVICE

I, Andrew C. Sand, Assistant United States Attorney, hereby certify that on April 26, 2021, an electronic copy of Plaintiff–Appellee's Brief was served by notice of electronic filing via this court's ECF system upon opposing counsel, Lewis Thomas.

Upon notification that the electronically filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be submitted to the Clerk. *See* 5th Cir. R. 25.2.1; 5th Cir. R. 31.1; 5th Cir. ECF filing standard E(1).

s/ Andrew C. Sand
ANDREW C. SAND
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,957 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3.  This brief complies with the privacy-redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.  This brief complies with the electronic-submission requirement of 5th Cir. R. 25.2.1 because it is an exact copy of the paper document.

5.  This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security scanning program and is free of viruses.

s/ Andrew C. Sand
ANDREW C. SAND
Assistant United States Attorney
Dated: April 26, 2021